IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ERIC ROMAR STANLEY                                                    PLAINTIFF

v.                              Civil No. 4:22-cv-04036

CORPORAL GRAY; OFFICER SMITH;
OFFICER MARTINEZ; CAPTAIN ADAMS;
and WARDEN WALKER                                                    DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, Eric Romar Stanley, under 42 U.S.C. § 1983.  Plaintiff names as Defendants Corporal Gray, Officer Smith, Officer Martinez, Captain Adams, and Warden Walker.  Plaintiff alleges his claims against all Defendants in both their official and individual capacities.  Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 31).  Plaintiff responded.  (ECF No. 34).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011) the Honorable Susan O. Hickey Chief United States District Judge referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I. BACKROUND

In March 2022, Plaintiff was incarcerated in Miller County Detention Center ("MCDC") in Texarkana, Arkansas.  At all times relevant to the instant lawsuit, all Defendants were employees at the MCDC.  (ECF No. 7, pp. 2-4).  The complained of actions occurred on March 25, 2022 inside the MCDC and center around an incident where Plaintiff was stripped and placed in a one-man psych cell with another inmate.  (ECF No. 7).

In his Amended Complaint, Plaintiff asserts three claims: (1) Defendants Gray, Smith, and Martinez violated Plaintiff's constitutional rights through his conditions of confinement; (2) Defendants Gray, Smith, and Martinez violated his constitutional rights with excessive force; and (3) all Defendants violated his constitutional rights through cruel and unusual punishment.  (ECF No. 7, pp. 6-8).

In Claim One, Plaintiff claims Defendants Gray, Smith, and Martinez stripped him, and placed him in a "one-man psych cell" with another dangerous inmate, Mr. Land.  Plaintiff classifies this claim as a conditions of confinement claim.  Plaintiff specifically states Defendants Gray, Smith, and Martinez showed deliberate indifference to his safety by ignoring the risk related to placing him, while naked, in the same cell with this dangerous inmate.  Plaintiff alleges these actions violate his Eighth Amendment rights, and caused him anxiety, uncontrollable nervousness, and "emotional demoralization."  (ECF No. 7, pp 6-7).

In Claim Two, Plaintiff claims Defendant Smith maced him.  Then, Defendants Smith, Martinez, and Gray grabbed him and forced him into the one-man psych cell with Mr. Land—a dangerous inmate.  Defendants Smith and Martinez then held Plaintiff against the wall while Defendant Gray stripped off all of Plaintiff's clothing.  Plaintiff classifies this claim as an excessive force claim. Plaintiff specifically states these Defendants showed deliberate indifference to his safety, subjected him to cruel and usual punishment, and exhibited excessive force against him with these actions.  Plaintiff claims these actions violated his Eighth Amendment rights, and caused him "emotional demoralization," mental trauma, anguish, and "physical emotional torture." (ECF No. 7, pp. 7-8).

In Claim Three, Plaintiff alleges all Defendants subjected him to cruel and unusual punishment.  Specifically, Defendants Walker and Adams "deviated" the actions of Defendants

Gray, Smith, and Martinez by allowing them to place Plaintiff in the one-man psych cell. Plaintiff goes on to allege these Defendants showed him deliberate indifference by: (1) ignoring obvious safety factors; (2) subjecting him to cruel and unusual punishment; (3) subjecting him to excessive force when they stripped off his clothes and forced him into a one-man cell with another inmate. Plaintiff claims these actions by Defendants caused him anxiety, uncontrollable nervousness, and mental trauma, emotional as well as physical demoralization, mental anguish, and physical emotional torture. (ECF No. 7, pp. 8-9).

Plaintiff asserts his claims against all Defendants in their individual and official capacities. (ECF No. 7). For relief, Plaintiff requests 1.3 million dollars in compensatory and punitive damages for physical and emotional torture, physical and emotional demoralization, uncontrollable nervousness, mental anguish, nightmares, anxiety, mental trauma, and lasting physical distress, scarring on his right foot, and disrespect to his constitutional rights. (ECF No. 7, p. 9).

Defendants filed their Motion for Summary Judgment with Brief in Support and Statement of Facts on January 26, 2023. (ECF Nos. 31, 32, 33). In their Motion, Defendants argue: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants' use of force was reasonable; (3) Defendants are entitled to qualified immunity on the excessive force claim; and (4) Plaintiff failed to state an official capacity claim. (ECF No. 32). Defendants failed to move for summary judgment for any claims asserted against Defendant Gray. Defendants also failed to move for summary judgment on Plaintiff's Claims One and Three.

Defendants also filed a Supplement to their Motion for Summary Judgment on April 12, 2023. (ECF No. 40). This Supplement included additional exhibits in support of Defendants' Brief in Support but no additional arguments. *Id.*

Both parties submitted statements of facts. (ECF Nos. 33, 35). The parties only dispute a few of the material facts. On March 25, 2022, Defendants Smith and Martinez moved Plaintiff from his cell in the Max D pod to a psych cell. Defendants assert this relocation was in response to Plaintiff's suicidal statements. (ECF No. 33, p. 1). Plaintiff denies he ever made any suicidal statements. (ECF No. 35, p. 1). Plaintiff initially would not leave his Max D cell, and Defendant Gray was called to assist Defendants Smith and Martinez. However, upon Defendant Gray's arrival, Plaintiff was cooperating with Defendants Smith and Martinez. (ECF No. 33, p. 1).

Once at the psych cell door, Plaintiff was instructed to remove all his clothes before entering the psych cell per MCDC policy. Plaintiff refused. Defendant Smith then ordered Plaintiff to strip three times, but Plaintiff continued to refuse. *Id*. at 2. Defendant Smith warned Plaintiff he would spray him with pepper spray if he did not comply. Plaintiff continued to refuse. (ECF No. 31-2, p. 8). According to Defendants' Statement of Facts, the video footage from the incident then shows Plaintiff walking away from Defendants and physically resisting them. (ECF No. 31-3). Plaintiff did not dispute this rendition of the video footage. (ECF No. 35). Defendant Smith then gave a short burst of "OC spray" to Plaintiff. Defendants assert this spray was to gain control over Plaintiff (ECF No. 33, p. 2), but Plaintiff contends Defendant Smith sprayed him in retaliation for a prior event that occurred on March 12, 2022, (ECF No. 35, p. 1). Plaintiff was then offered decontamination and medical assessment. (ECF No. 33, p. 2).

The parties agree Plaintiff filed a Prison Rape Elimination Act ("PREA") claim against Defendant Martinez. Plaintiff, however, alleges his PREA complaint was against Defendants Martinez, Gray, and Smith. (ECF No. 35, p. 2). Defendants concluded Plaintiff's PREA claim was "unsubstantiated." (ECF No. 33, p. 3). Plaintiff alleges the PREA claim was not fully

investigated, but the results of the investigation showed the incident did occur.  (ECF No. 35, p. 2).

In addition to the disputed facts, Plaintiff also filed a Response to Defendants' Motion for Summary Judgment on May 17, 2023.  (ECF No. 45).  In his Response, Plaintiff submitted an additional list of disputed facts and arguments.  Specifically, Plaintiff lists the following facts as in dispute:

(1) on March 25, 2022, at 9:26 a.m., Plaintiff filed a grievance requesting help because he felt officers were trying to harm him;

(2) on March 25, 2022, at 9:45 a.m., Defendants attempted to escort Plaintiff to a psych cell which already housed a highly dangerous fugitive, Mr. Land, who had only been in MCDC custody for approximately 72 hours;

(3) Plaintiff never made any suicidal statements;

(4) Plaintiff was not pepper sprayed because he was backing down the hallway;

(5) Plaintiff backed down the hallway because he was peppered sprayed;

(6) Plaintiff was stripped and put in the one-man cell with Mr. Land who was threating harm to Plaintiff;

(7) an officer outside the one-man cell played music and this should be viewable on the video footage;

(8) Mr. Land told Defendants he would break Plaintiff's jaw if they put him back in the cell when they brought him back from medical;

(9) Plaintiff filed Grievance Number 11,296,632 regarding the incident and was told to file a regular request of the incident stating the names of officers involved;

(10) there are several requests listing the officers names;

(11) the incident report does not list a real offense report, investigating officer, or disciplinary action on the incident;

(12) Defendants never told Plaintiff what they believed was false about his claim;

(13) in Grievance Number 11,422,313 Plaintiff complained of his PREA claim being dismissed and Defendant Martinez working near him;

(14) in response to Grievance Number 11,422,313, Plaintiff was informed false allegations would result in disciplinary action;

(15) Plaintiff never received any disciplinary action based on false allegations regarding Grievance Number 11,422,313;

(16) Grievance Number 11,432,752 asks to speak with "CID" and press charges against Defendants Gray, Smith, and Martinez;

(17) there is a camera outside the psych cell where the incident occurred;

(18) Plaintiff filed twenty grievances on this matter including #11,422,313 #11,465,779 #11,432,535   #11,322,727   #11,322,847   #11,429,252   #11,500,927   #11,507,972 #11,508,118   #11,408,270   #11,572,482   #11,322,415   #11,352,249   #11,432,752 #11,437,666 #11,443,732 #11,556,331 #11,568,827 #11,568,869 #11,628,223;

(19) the video footage of the incident has been modified because it does not show Defendant Smith spray Plaintiff with pepper spray, it does not show Defendants refusing to give Plaintiff cover for himself, and it does not show Defendants leaving the cell; and finally

(20) Defendants failed to argue against Plaintiff's claims of deliberate indifference, cruel and unusual punishment, and conditions of confinement.  (ECF No. 34).[1]

Defendants then filed a Reply to Plaintiff's Response on May 25, 2023.  (ECF No. 46).  In their Reply, Defendants argue Plaintiff's affidavit submitted in his Response is conclusory, self-serving, and unsupported by material facts relevant to the issue at hand.  Defendants argue the Court should not consider Plaintiff's allegations as meeting proof with proof.  *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine

---

[1] Plaintiff also makes allegations regarding a previous incident and retaliation for this incident for the first time in his Response.  Additionally, Plaintiff alleges a state law claim for assault against Defendant Smith in his Response for the first time.  However, Plaintiff made no such claims in his Amended Complaint.  The Court will not consider claims herein raised for the first time in response to a motion for summary judgment.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their

duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III.  DISCUSSION

As an initial matter, the Court notes it will not be considering Plaintiff's Claims One or Three in this Report and Recommendation—other than to the extent Claim Three reiterated Plaintiff's excessive force claim from Claim Two—as Defendants did not move for summary judgment on Claims One and Three.  (ECF No. 31, 32).  The only claim which Defendants seek summary judgment over is Plaintiff's claim of excessive force alleged in Claim Two.[2] Furthermore, Defendant Gray did not move for summary judgment along with his fellow Defendants.  (ECF No. 31).  Accordingly, the Court will not address any claims made against Defendant Gray in this Report and Recommendation.

### A.    Failure to exhaust

Defendants first argue Plaintiff failed to exhaust his administrative remedies regarding his claim of excessive force against Defendants.  Defendants argue Plaintiff did not specifically

---

[2] Defendants do make an argument in their Brief regarding Plaintiff's allegations of fear of sexual assault not being a cognizable claim pursuant to Section 1983.  However, the Defendants did not address Plaintiff's claims of conditions of confinement and deliberate indifference to his safety when placed in a one-man cell with a dangerous inmate while nude.  Accordingly, the Court does not construe the argument regarding a fear of rape to appropriately move for dismissal of Claims One and Three.

mention by name all the Defendants in his grievances, and he did not allege specific facts and circumstances in his grievances as required by MCDC grievance policy and procedure.

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id.* at 219.  "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures.  *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Here, Plaintiff submitted over twenty grievances, complaints, or requests related to the incident on March 25, 2022. However, the issue of exhaustion presented by Defendants is not whether Plaintiff submitted a grievance but whether Plaintiff's grievances complied with the MCDC grievance procedure in a way that satisfies the exhaustion requirement.

The MCDC policy and procedure reads in pertinent part:

C. POLICY: The Miller County Jail affirms that it shall protect and promote the safety and Constitutional Rights of Inmates and shall seek a balance between the expression of individual rights and the preservation of facility order and security. Procedures for Inmates to file a complaint or grievance are established.

D. DEFINITIONS

COMPLAINT – A verbal and/or written communication with staff for informal resolution of an incident, policy, procedure, or condition within the jail which personally/directly affects the inmate. These may be submitted through the KIOSK in the Housing Areas.

GRIEVANCE – Written communication for formal resolution of an incident, policy, procedure, or condition within the jail which personally affects the inmate filing the grievance. A grievance can only be made subsequent to filing a written complaint and receiving a written response.

NOT SUSTAINED – The investigation revealed the allegations were not true/accurate, or the evidence was insufficient to substantiate the allegations.

SUSTAINED – The investigation revealed sufficient evidence to support or substantiate the reported allegation(s) occurred.

(ECF No. 31-7, p. 1). The procedure then goes on to explain how an inmate may submit a Complaint and Grievance:

3. COMPLAINTS

a. Inmate complaints shall be submitted through the KIOSK.

b. Inmate requests/concerns/complaints shall be reviewed daily (excluding weekends and holidays) and routed to the appropriate person to address. A response to all complaints shall be provided to the inmate in a timely manner.

c. Complaints directed to a particular supervisory level (i.e. Captain or Major) does not require that they respond. Complaints will be forwarded to the lowest appropriate supervisory level to address and respond.

d. Multiple copies of the same complaint, directed to multiple supervisory levels will be combined and addressed at the lowest level appropriate.

e.  Appropriate criminal charges for filing a false report and/or perjury may be pursued.  Complaints which have already been answered do not require additional responses.  Repetitive complaints shall be returned to the Inmate.

f.  The supervisor addressing the complaint shall ensure a response is delivered to the inmate.

4.  GREIVANCES

a.  The Jail Warden or designee is responsible for the coordination and management of the grievance procedures.  Inmates who cannot resolve a complaint through the procedure using the KIOSK shall have access to a grievance procedure.  Inmate grievances which are determined to be untruthful/frivolous will be considered the same as lying to staff members and appropriate sanctions may be imposed. Appropriate criminal charges for filing a false report and/or perjury may also be pursued.  Grievances and appeals which have already been answered do not require additional responses.  Repetitive grievances or appeals shall be returned to the inmate.

. . .

2) Inmates may grieve the following matters:

. . .

c) Incidents occurring within the facility that affect them personally/directly including a disciplinary decision;

d) Any matter relating to conditions of care or supervision with the authority of the miller County Jail

. . .

4) Inmates must follow the below procedures to submit a grievance;

a)  All grievances shall be submitted on a Request for Administrative Remedy Form, jail form 09.01A obtainable from a shift officer or supervisor.

b)  At all levels of the grievance or appeal process, it will be the responsibility of the Inmate to present only specific facts and circumstances directly relating to the complaint.  The Inmate should be brief and concise, stating only one issue per form.  The Inmate should also state the remedy which they are seeking and state what the original complaint addressed. Grievances received without an original complaint and response shall be promptly returned.

c)  Upon completion of the Request for Administrative Remedy Form by the Inmate, the form shall be routed to the Facility.

11

(ECF No. 31-7, pp. 4-7).  Nowhere in the procedure, on the summary judgment record, is there a requirement that each employee complained of or grieved against shall be specifically named.

Defendants first argue Plaintiff failed to exhaust his administrative remedies as to all Defendants except Martinez because he only specifically named Defendant Martinez in his grievances and complaints.  Defendants rely upon an Eastern District of Arkansas case, *Waller v. Kelley,* to support this argument.  *Waller,* 956 F.Supp.2d 1007 (E.D. Ark. May 6, 2013).  In *Waller*, however, the Court explains that to satisfy the PLRA exhaustion requirements, the prisoner "must fully comply with the specific procedural requirements of the incarcerating facility."  *Id*. at 1010 (citing *Jones v. Bock,* 549 U.S. 199, 218 (2007)).  The *Waller* Court goes on to note the facility at issue in that case, the Arkansas Department of Correction ("ADC"), exhaustion policy states: "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC" and "[i]nmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties."  *Waller*, 956 F.Supp.2d at 1010.  Additionally, the *Waller* Court notes the ADC grievance form includes a reminder to name all personnel involved.  *Id*.

While the Eastern District of Arkansas did determine Mr. Waller failed to satisfy the PLRA exhaustion requirements, this decision was based on the specific requirements of the ADC grievance procedure to specifically name all personnel.  The *Waller* Court simply applied the ADC requirements.  The general exhaustion requirements under the PLRA remains as stated in *Jones*— to fully comply with the specific requirements of the incarcerating facility's grievance procedure. *See Waller,* 956 F.Supp.2d at 1010.

Here, the Defendants failed to point the Court to any specific naming requirement in the MCDC policy and procedure on grievances and complaints, and the Court was also unable to find

any such requirement upon its own review of the policy.  Accordingly, Plaintiff's failure to list all Defendants' names is not a violation of the MCDC policy.  Thus, it does not necessitate a finding he failed to exhaust his administrative remedies under the PLRA.

Secondly, Defendants argue Plaintiff failed to exhaust because he did not include specific facts and circumstance in his complaints and grievances.  Defendants cite to Section E.4.A.4.b. of the MCDC grievance policy in support of their second failure to exhaust argument:

> At all levels of the grievance or appeal process, it will be the responsibility of the Inmate to present only specific facts and circumstances directly relating to the complaint.  The Inmate should be brief and concise, stating only one issue per form.  The Inmate should also state the remedy which they are seeking and state what the original complaint addressed.  Grievances received without an original complaint and response shall be promptly returned.

(ECF No. 37-1, p. 5).  The Court again is unconvinced by Defendants' argument.  Plaintiff filed multiple grievances on the incident and in many of those grievances listed out the specific actions of which he complained.  In his first grievance, filed on March 28, 2022, Plaintiff states:

> I will like to file prea charges I feel sexual assaulted Friday the 25th of march around 9 am I was mase and stripped out my clothes and thrown in a pysyce cell legally blind with another man butt naked not even a shield to cover myself for thirty mins and on the outside I can here some one playing music the song that's on me baby by yellow bezzy the rap artist like they were want me to perform a dance for them I felt rape violated and less of a man during this encounter

(ECF No. 31-8, p. 31) (errors in original).

Plaintiff continued to file additional grievances on this matter through April 25, 2022.  In total, Plaintiff filed ten grievances.  The Court finds the first Grievance #11,320,727, filed on March 28, 2022, includes sufficient specific facts to put Defendants on notice of the incident of which Plaintiff complains.  In this grievance, Plaintiff presented "specific facts and circumstances directly relating to [his] complaint" as required by Section E.4.A.4.b. of the MCDC Policy.  Plaintiff listed the date and time of the incident, and specifically listed his allegations of

complained of conduct from the incident—sexual assault through the stripping by officers, macing by officers, and the officers placing Plaintiff in a psych cell with another inmate while nude.  These facts are sufficiently specific and similar to the facts alleged in Plaintiff's Complaint in this matter. The Court finds there are no genuine issues of material fact as to whether Grievance #11,320,727 complies with MCDC policy and procedure, (ECF No. 37-1, p. 5).  Therefore, the Court finds Plaintiff exhausted his administrative remedies in satisfaction of Section 1997e(a).

### B.  Claim Two - Excessive force

In Claim Two, Plaintiff claims Defendant Smith maced him.  Then, Defendants Smith, Martinez, and Gray grabbed him and forced him into the one-man psych cell with Mr. Land. Defendants Smith and Martinez then held Plaintiff against the wall while Defendant Gray stripped off all of Plaintiff's clothing.  Plaintiff claims these Defendants exhibited excessive force against him with these actions.  Plaintiff claims these actions violated his Eighth Amendment rights and caused him "emotional demoralization," mental trauma, anguish, and "physical emotional torture." (ECF No. 7, pp. 7-8).  The Court interprets Plaintiff's Claim Two to assert an excessive force claim for three independent uses of force: (1) pepper spraying Plaintiff; (2) grabbing Plaintiff and forcing him inside the psych cell; and (3) holding Plaintiff against the wall and stripping off his clothes.

Defendants do not dispute force was used against Plaintiff but argue the force was objectively reasonable given the circumstances; thus, Defendants are entitled to qualified immunity.  The undisputed material facts surrounding Plaintiff's claim of excessive force include:

(1) on March 25, 2022, Defendants Smith and Martinez moved Plaintiff from his cell in the Max D pod to a psych cell;

(2) Plaintiff initially refused to leave his Max D cell but after Defendants Smith and Martinez called for assistance from Defendant Gray, Plaintiff cooperated (ECF No. 33, p. 1);

(3) once at the psych cell, Plaintiff was ordered to remove all of his clothes and enter the psych cell at least three times; but, Plaintiff again refused direct orders from the Defendants, *Id*. at 2;

(4) Defendant Smith warned Plaintiff he would spray him with pepper spray if he did not comply (ECF No. 31-2);

(5) the video footage from the incident does not show the spraying and skips frames to a shot where Plaintiff is standing away from the door to the psych cell;

(6) Plaintiff then resisted Defendants as they grabbed him and escorted him back to the cell, *Id*.;

(7) Defendant Smith gave a short burst of OC spray to Plaintiff's face at some point during Plaintiff's resistance, (ECF No. 33, p. 2);

(8) Plaintiff was then offered decontamination and medical treatment if needed (ECF No. 33, p. 2); and

 (9) while returning to the psych cell from medical, Plaintiff again resisted going back into the cell.  (ECF No. 33, p. 3).

The video footage submitted by Defendants (ECF No. 31-3) does not show Defendant Smith spraying Plaintiff.  It does show Defendants grabbing Plaintiff as he is attempting to walk backward down the hallway away from the cell and forcibly escorting him into the cell. *Id*.  The video does not contain audio, but it is obvious, from Plaintiff's animated and agitated body language, Plaintiff is arguing with the Defendants prior to being forced into the cell.  *Id*.

The parties dispute whether Plaintiff made a suicidal statement to initiate the transfer to the psych cell.  (ECF No. 33, p. 1; ECF No. 35, p. 1).  Plaintiff states he made no such statement, while Defendants allege it was Plaintiff's suicidal statements that prompted the transfer and necessity for placement in the psych cell.

### 1.  Excessive Force Generally

While Plaintiff claims his Eighth Amendment rights were violated by Defendants' use of force, it is not the Eighth Amendment but the Fourteenth Amendment's Due Process Clause that

protects Plaintiff, a pretrial detainee.  The objective reasonableness standard applies to excessive force claims brought by pretrial detainees.  *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "[T]he defendant's state of mind is not a matter that a plaintiff is required to prove."  *Id.* at 394.  A pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396.

The objective reasonableness of a use of force "turns on the 'facts and circumstances of each particular case.'"  *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989).  This determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Id.* Additionally, "[a] court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

"[O]bjective circumstances potentially relevant to a determination of excessive force" include:

> the reasonableness or unreasonableness of the force used; the relationship between the need for the use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).  An action is objectively unreasonable if it is not reasonably related to legitimate governmental interests, such as maintaining order and security, or is excessive in relation to that objective. *Id.* at 398-99.

The court must analyze each of Plaintiff's purported uses of force under this legal standard to determine if Defendants were objectively reasonable in each use of force.

### 2. Use of Pepper spray on Plaintiff

First, the Court will consider Defendant Smith's use of pepper spray on Plaintiff. The Court notes it is unclear when the pepper spray was dispensed, and the video footage offers no clarification as it skips and appears to be missing frames of the incident. However, despite this inadequacy in the video evidence, the parties do not dispute Plaintiff refused at least three orders from Defendants to disrobe and enter the psych cell prior to the spraying. (ECF Nos. 33, 35). Further, the parties do not dispute the discharge of pepper spray was short and to Plaintiff's face. (ECF Nos. 33, 35). Plaintiff asserts he was sprayed prior to walking away from the Defendants down the hallway. Finally, the parties do not dispute Plaintiff was offered decontamination and medical treatment shortly after the pepper spray was used. (ECF No.33, 35).

The summary judgment record is devoid of any evidence indicating Plaintiff suffered any injury caused by the pepper spray. The parties dispute whether Plaintiff made suicidal statements prior to this incident, prompting the need for housing in the psych cell. Plaintiff claims he did not, therefore, the Court will analyze the relevant factors with the assumption Plaintiff was not suicidal at the time of the incident. Finally, the parties dispute whether the pepper spray by Defendant Smith was intended to gain control over Plaintiff or in retaliation for previous events between Plaintiff and Defendant Smith. (ECF No. 33, p. 2; ECF No. 35, p. 1).

It is well-settled that pepper spray or other summary applications of force may be used to control a recalcitrant inmate if the inmate poses a threat to himself or others. *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 2000). The summary judgment record here clearly indicates Plaintiff was behaving as a recalcitrant inmate which Defendants were attempting to regain control. He first

refused to leave his initial cell.  Then, he refused three orders from Defendant Smith to disrobe and enter the psych cell even after a warning he would be pepper sprayed if he failed to comply. Further, as evident on the summary judgment record, Plaintiff was unrestrained, visibly agitated, actively resisting, and walked away from the Defendants down the hallway rather than complying with the order to enter the secure psych cell.

The Court finds a reasonable officer would assess Plaintiff under these circumstances as a risk to themselves and to the security of the MCDC, even if he was not suicidal.  Use of reasonable force in such instance, to regain control over his person and location, is entirely permissible.  *See Kingsley*, 576 U.S. at 397. *See also Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (force may be justified to make an inmate comply with a lawful order, but only if the inmate's noncompliance poses a threat to other persons or to prison security); *Cf. Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002) (an excessive force claim exists when an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat).

Further, it is undisputed the spray was of short duration, and Plaintiff was offered decontamination and medical assessment approximately thirty minutes after the incident.  (ECF No. 31-2).  Plaintiff does not allege any, and the summary judgment record is devoid of any evidence of, physical injury from the pepper spray.  *See Chambers v. Pennycook,* 641 F.3d 898 (8th Cir. 2011) (explaining a *de minimis* injury cannot preclude a claim for excessive force, however, the lack of, or minor degree of, injury is a relevant factor in determining the reasonableness of the force used) (citing *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005)).

Finally, Plaintiff argues Defendant Smith pepper spraying him was motivated by retaliation from some earlier complaint Plaintiff filed against Defendants Smith.[3]  While the standard for excessive force used against pretrial detainees does not consider the subjective state of mind of the offender, *Kingsley v. Hendrickson*, 576 U.S. at 394, and malice on the part of the offending officer will not turn reasonable force into an excessive force violation, *Wilson v. Spain*, 309 F.3d 713, 717 (8th Cir. 2000), the Due Process Clause of the Fourteenth Amendment does protect pretrial detainees from the use of excessive force that amounts to punishment, *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).  Therefore, the Court must consider whether the summary judgment record supports Plaintiff's contention that Defendant Smith's use of force—spraying pepper spray in Plaintiff's face—was for the purpose of injuring, punishing or disciplining Plaintiff.  *See Edwards v. Byrd,* 750 F.3d 728, 732 (8th Cir. 2014) (explaining a use of flash bang grenade in close quarters, along with kicking detainees, and shooting them with bean bag guns while detainees were not resisting and lying face down on bunks, was done to inflict harm rather than restore discipline).

Immediately prior to the use of pepper spray on the Plaintiff, he was agitated, actively resisting officers, and refusing to comply with direct orders from officers.  Plaintiff was unrestrained and outside of a secure housing cell in the hallway of the MCDC.  Further, Defendant Smith warned Plaintiff and gave him the chance to avoid the spraying.  These undisputed facts on the record support a finding of objectively reasonable use of force even if Defendant Smith possessed a retaliatory state of mind.  The force used was proportional to the threat and rationally related to the legitimate interest of maintaining security at the MCDC.  *See Wilson,* 209 F.3d at

---

[3] The Court notes this allegation of retaliation is alleged for the first time in Plaintiff's Response to Defendants' Motion for Summary Judgment.  Accordingly, the Court does not consider it a new and separate claim, but instead an argument in support of Plaintiff's claim of excessive force.

717 (even if the officer was angry and made threats to the detainee, it does not alter the objective reasonableness of the use of force applied); *see also Leonard v. St. Charles Cty Police Department*, 59 F.4th 355, 360 (8th Cir. 2023) (holding officer's use of pepper spray, after a warning, on detainee in his cell was objectively reasonable as the detainee refused an order to remain kneeling, physically resisted restraint, and started to move toward the open door of his cell).

Accordingly, the Court finds Defendants Smith's use of a short burst of pepper spray in Plaintiff's face, after three orders were defied and a warning was issued, to secure Plaintiff in his housing unit, was objectively reasonable; thus, not rising to the level of a constitutional violation.

### 3. Forcing Plaintiff into a cell

Next, the Court must address Plaintiff's excessive force claims regarding Defendants Smith and Martinez grabbing Plaintiff and forcing him into the cell. The facts of this use of force are wholly undisputed. After Plaintiff declined to follow orders, resisted Defendants, and walked away down the hallway, Defendants grabbed Plaintiff and physically forced him into the psych cell. This use of force was viewable on the video footage on the summary judgment record. Prior to Defendants grabbing Plaintiff, he was first viewed arguing with the Defendants. Then, the video skips frames and Plaintiff appears down the hallway from his original location backing away from the officers. Additionally, it is undisputed Plaintiff refused three direct orders to disrobe and enter the cell immediately prior to backing down the hallway. The video shows two officers firmly grab Plaintiff by the arms and escort him back down the hallway and inside the cell. Plaintiff can be seen actively resisting Defendants as they escort him. (ECF No. 31-3). Plaintiff never leaves his feet during this escort. Just as with the pepper spray, the Court finds Plaintiff was acting as a recalcitrant inmate, posed a threat to the Defendants and the security of the MCDC, and Defendants needed to regain control of him. The Court finds any reasonable officer would have grabbed

Plaintiff and forced him into a cell to secure him under these circumstances.  *See Hickey*, 12 F.3d at 757; *see also Porter v. Cape Girardeau County*, 2022 WL 990676, *6-7 (E.D. Mo. Mar. 31, 2022) (finding objectively reasonable the tasing and choke hold of a detainee for refusing multiple orders to enter his cell).

Further, there are no physical injuries established by the summary judgment record here other than a "scar" on Plaintiff's foot.  (ECF No. 7, p. 9).  This "scar" is alleged in Plaintiff's Complaint, but there is no evidence in the summary judgment record this "scar" required medical treatment.  As explained above, while *de minimis* injuries do not foreclose an excessive force claim, the degree of injury is relevant to the Court's analysis as it tends to show the amount and type of force used.  *Bishop v. Glazier*, 7232 F.3d 957, 962 (8th Cir. 2013) (internal quotations omitted).  Accordingly, the Court finds Defendants Smith and Martinez's use of force in grabbing Plaintiff and physically escorting him into the psych cell was objectively reasonable; thus, it does not rise to the level of a constitutional violation.

### 4.  Forcefully stripping clothes from Plaintiff

Finally, Plaintiff alleges the forcible stripping off his clothes while being held against the wall constitutes excessive force.  As explained above, the facts related to this claim are undisputed, except for whether Plaintiff was suicidal.  As before, the court will presume Plaintiff was not suicidal in considering the facts in a light most favorable to Plaintiff.  Plaintiff claims in his Amended Complaint that Defendants Smith and Martinez held him against the wall while Defendant Gray stripped off his clothing.  (ECF No. 7, p. 7).  The summary judgment record does not dispute this rendition of the facts.  The video footage on the summary judgment record does not show this use of force.  Plaintiff does not dispute the MCDC has a policy against him wearing his clothes in the psych cell.  (ECF No. 31-1).  Lastly, it is undisputed Plaintiff refused to follow

three prior orders to enter the cell and disrobe, actively resisted Defendants upon his entry into the cell, and was visibly agitated immediately prior to entry into the cell. As previously explained, the Court finds Plaintiff was acting as a recalcitrant inmate, posed a threat to the Defendants and the security of the MCDC, and Defendants needed to regain control of him and secure him in the psych cell. *See Hickey*, 12 F.3d at 757; *See also Pehriz v. Kansas City Bd. Of Police Com'rs*, 2015 WL 5604441 (W.D. Mo. Sept. 23, 2015) (reasonable use of force to cuff detainee, push her against the wall, and forcible remove her clothes in compliance with jail policy of removing soiled clothing from detainees once they arrive in the jail).

Further, there are no physical injuries established by the summary judgment record here other than a "scar" on Plaintiff's foot. (ECF No. 7, p. 9). This "scar" is alleged in Plaintiff's Complaint, but there is no evidence in the summary judgment record this "scar" required medical treatment. And as explained above, while *de minimis* injuries do not foreclose an excessive force claim, the degree of injury is relevant to the Court's analysis as it tends to show the amount and type of force used. *Bishop v. Glazier*, 7232 F.3d 957, 962 (8th Cir. 2013) (internal quotations omitted). Accordingly, the Court finds Defendants Smith and Martinez use of force in forcibly disrobing Plaintiff was objectively reasonable; thus, it does not rise to the level of a constitutional violation.

### 5. Qualified immunity

Defendants argue they are entitled to qualified immunity on Plaintiff's excessive force claims. Qualified immunity "shields [a] government official from liability in a section 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "At summary judgment, qualified immunity shields

a law enforcement officer from liability in a § 1983 action unless: (1) the facts viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted).

Here, taking all the facts in the light most favorable to Plaintiff, the Court finds Defendants Smith and Martinez are entitled to qualified immunity on Plaintiff's excessive force claim because the facts as alleged by Plaintiff fail to demonstrate Defendants Smith and Martinez were objectively unreasonable in their use of force. The Court need not determine whether Plaintiff's rights were clearly established at the time of the incident as it has concluded Plaintiff's constitutional rights were not violated as a matter of law. *See Habhab v. Hon,* 536 F.3d 963, 969 (8th Cir. 2009) (there is no need to analyze the second prong of the qualified immunity analysis if the facts alleged do not amount to a constitutional violation).

### 6. *Respondeat superior*

Lastly, if Plaintiff alleges his excessive force claims against Defendants Walker and Adams, those claims must also fail as a matter of law.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Dunham v. Wadley,* 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under Section 1983. *See Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344, 348 (1986).

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994); *see also Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir.2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King,*130 F.3d 1309, 1314 (8th Cir.1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir.2007) (*quoting Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir.2006)).

Plaintiff did not allege any actions or personal involvement of Defendants Walker or Adams in his excessive force claim. Accordingly, Plaintiff's Claim Two fails as a matter of law against Defendants Walker or Adams.

### C.      Official Capacity Claims

Plaintiff also alleged an official capacity claim against Defendants Smith and Martinez for their use of excessive force. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claim against Defendants Smith and Martinez is treated as a claim against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, this means Plaintiff must produce summary judgment evidence to show a policy or custom of Miller County contributed to his claimed constitutional violation—excessive force.

Defendants argue Plaintiff failed to provide any summary judgment evidence showing how the MCDC Use of Force Policy or a custom of Miller County caused a violation of his constitutional rights. (ECF No. 32, p. 19). The Court agrees. Furthermore, having determined the facts alleged do not rise to the level of a constitutional violation through excessive force, there can be no valid official capacity claim against Miller County for causing the excessive force. *See Moyle*, 571 F.3d at 817.

## IV. CONCLUSION

For the reasons stated above, I recommend the Defendants' Motion for Summary Judgment (ECF No. 31) be **GRANTED** and Plaintiff's Claim Two for excessive force against Defendants Smith, Martinez, Walker, and Adams be **DISMISSED WITH PREJUDICE**. This leaves for further litigation Plaintiff's: (1) Claim One alleged against Defendants Gray, Smith, and Martinez; (2) Claim Two alleged against Defendant Gray, and (3) Claim Three alleged against Defendants Gray, Smith, Martinez, Adams, and Walker.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 1st day of August 2023.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE