IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ERIC ROMAR STANLEY                                                                    PLAINTIFF

v.                                   Civil No. 4:22-cv-04036-SOH-BAB

CORPORAL GRAY; OFFICER SMITH;
OFFICER MARTINEZ; CAPTAIN ADAMS;
and WARDEN WALKER                                                          DEFENDANTS

## <u>REPORT AND RECOMMENDATION</u>

This is a civil rights action filed *pro se* by Plaintiff, Eric Romar Stanley, under 42 U.S.C.

§ 1983.  Plaintiff names as Defendants Corporal Gray, Officer Smith, Officer Martinez, Captain

Adams, and Warden Walker (hereinafter "County Defendants").  Plaintiff alleges his claims

against all Defendants in both their official and individual capacities.  Before the Court is

Defendants' Adams, Gray[1], Martinez, Smith, and Walker's Second Motion for Summary

Judgment, (ECF Nos. 53-55), and Supplement to Second Motion for Summary Judgment, (ECF

No. 80).  Plaintiff responded to the Second Motion for Summary Judgment.  (ECF Nos. 60-62).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011) the Honorable Susan O.

Hickey Chief United States District Judge referred this case to the undersigned for the purpose of

making a Report and Recommendation.

---

[1] Defendant Gray is represented in his official capacity only in the instant Motion for Summary
Judgment.  (ECF No. 54).  Defendant Gray has filed a separate Motion for Summary Judgment
regarding the individual claims alleged against him.  (ECF No. 81).  Defendant Gray's Motion for
Summary Judgment will be addressed by separate Report and Recommendation.

# I. PROCEDURAL BACKROUND

In March 2022, Plaintiff was incarcerated in Miller County Detention Center ("MCDC") in Texarkana, Arkansas.  At all times relevant to the instant lawsuit, all County Defendants were employees at the MCDC.  (ECF No. 7, pp. 2-4).  The complained of actions occurred on March 25, 2022 at the MCDC and center around an incident where Plaintiff was stripped and placed in a psych cell with another inmate.  (ECF No. 7).

Plaintiff filed his Amended Complaint on May 16, 2022.  (ECF No. 7).  In his Amended Complaint, Plaintiff asserts three claims: (1) Defendants Gray, Smith, and Martinez violated Plaintiff's constitutional rights through his conditions of confinement; (2) Defendants Gray, Smith, and Martinez violated his constitutional rights with excessive force; and (3) all County Defendants violated his constitutional rights through cruel and unusual punishment.  (ECF No. 7, pp. 6-8).

In Claim One, Plaintiff specifically claims Defendants Gray, Smith, and Martinez stripped him and placed him in a "one-man psych cell" with another dangerous inmate.  Plaintiff classifies this claim as a conditions-of-confinement claim.  Plaintiff specifically states Defendants Gray, Smith, and Martinez showed deliberate indifference to his safety by ignoring the risk related to placing him, while naked, in the same cell with another dangerous inmate.  Plaintiff alleges these actions violate his Eighth Amendment rights, and caused him anxiety, uncontrollable nervousness, and "emotional demoralization."  (ECF No. 7, pp 6-7).

In Claim Two, Plaintiff claims Defendant Smith maced him.  Then, Defendants Smith, Martinez, and Gray grabbed him and forced him into the one-man psych cell with a dangerous inmate.  Defendants Smith and Martinez then held Plaintiff against the wall while Defendant Gray stripped off all of Plaintiff's clothing.  Plaintiff classifies this claim as an excessive force claim.  Plaintiff specifically states these Defendants showed deliberate indifference to his safety, subjected

him to cruel and usual punishment, and exhibited excessive force against him with these actions. Plaintiff claims these actions violated his Eighth Amendment rights, and caused him "emotional demoralization," mental trauma, anguish, and "physical emotional torture." (ECF No. 7, pp. 7-8).

In Claim Three, Plaintiff alleges all Defendants subjected him to cruel and unusual punishment. Specifically, Defendants Walker and Adams "deviated" the actions of Defendants Gray, Smith, and Martinez by allowing them to place Plaintiff in the one-man psych cell. Plaintiff goes on to allege these Defendants showed him deliberate indifference by: (1) ignoring obvious safety factors; (2) subjecting him to cruel and unusual punishment; and (3) subjecting him to excessive force when they stripped off his clothes and forced him into a one-man cell with another inmate. Plaintiff claims these actions by County Defendants caused him anxiety, uncontrollable nervousness, and mental trauma, emotional as well as physical demoralization, mental anguish, and physical emotional torture. (ECF No. 7, pp. 8-9).

Plaintiff asserts his claims against all Defendants in their individual and official capacities. (ECF No. 7). For relief, Plaintiff requests 1.3 million dollars in compensatory and punitive damages for physical and emotional torture, physical and emotional demoralization, uncontrollable nervousness, mental anguish, nightmares, anxiety, mental trauma, and lasting physical distress, scarring on his right foot, and disrespect to his constitutional rights. (ECF No. 7, p. 9).

Defendants filed their first Motion for Summary Judgment with Brief in Support and Statement of Undisputed Facts on January 26, 2023. (ECF Nos. 31, 32, 33). The Court issued a Report and Recommendation on this Motion on August 1, 2023. (ECF No. 49). The Honorable Susan O. Hickey adopted this Report and Recommendation on September 28, 2023 granting the first Motion for Summary Judgment and dismissing Plaintiff's Claim Two against Defendants

Smith and Martinez in both their individual and official capacities. (ECF No. 58). This left Claim Two only as alleged against Defendant Gray in his individual and official capacities.

Additionally, in its August 1, 2023 Report and Recommendation, the Court granted County Defendants leave to file a second Motion for Summary Judgment to address Plaintiff's Claims One and Three and all claims asserted against Defendant Gray. (ECF No. 49). County Defendants then filed the instant Second Motion for Summary Judgment on September 15, 2023. (ECF No. 53).

On the same day, County Defendants notified the Court their counsel did not represent Defendant Gray in his individual capacity, had not accepted service on his behalf, and provided the Court with Defendant Gray's last known address. (ECF No. 52). The Court then determined the summons issued on Defendant Gray at the MCDC that was returned executed, was not executed at the MCDC but instead at Defendant Gray's personal address. (ECF No. 12). However, Defendant Gray failed to Answer Plaintiff's Amended Complaint or otherwise enter an appearance in this matter. Accordingly, the Court entered an Order to Show Cause directing Defendant Gray to show cause why he failed to answer Plaintiff's Amended Complaint. (ECF No. 63). Defendant Gray responded and filed an Answer on November 2, 2023. (ECF No. 68).

The Court then re-opened discovery for Defendant Gray and Plaintiff, (ECF No. 69), and subsequently reopened all County Defendants discovery for the sole purpose of conducting Plaintiff's deposition, (ECF No. 73). After conducting Plaintiff's deposition, on June 14, 2024, County Defendants requested leave to supplement their Second Motion for Summary Judgment. (ECF No. 77). The Court granted County Defendants the requested leave and County Defendants' Supplement to Second Motion for Summary Judgment was filed on June 18, 2024. (ECF Nos. 79-80). Plaintiff was also directed to respond to County Defendants' Supplement by July 9, 2024.

(ECF No. 79). This Order to respond was not returned as undelivered mail, but Plaintiff failed to respond.

County Defendants argue in their Second Motion for Summary Judgment and Supplement: (1) Plaintiff's excessive force claims have already been dismissed; (2) Plaintiff has failed to show facts supporting his claim on his conditions of confinement; (3) Plaintiff has failed to show any deliberate indifference to his future harm; (4) Plaintiff has failed to established he suffered any cruel and unusual punishment; (5) Plaintiff did not suffer any physical injuries and therefore cannot support a Section 1983 claim; (6) County Defendants are entitled to qualified immunity; and (7) Plaintiff has failed to state any policy or custom to support his official capacity claims. (ECF Nos. 54, 80).[2]

Plaintiff did not file a Response to County Defendants Supplement as directed by the Court, but he did respond to County Defendants Second Motion for Summary Judgment. In that Response, Plaintiff argues genuine issues of material fact exist, and his claims against County Defendants should proceed to trial. (ECF No. 60). Plaintiff also submitted a statement of disputed facts, (ECF No. 62), and an additional document titled Plaintiff's Reply to Defendants Reply in Support of Motion for Summary Judgment, (ECF No. 61), in which he provides additional factual disputes.

---

[2] Defendants make additional arguments in their Supplement: (1) any claims related to Plaintiff's Prison Rape Elimination Act filing fails as a matter of law; (2) negligence is not a cognizable claim; and (3) Plaintiff cannot meet proof with proof. (ECF Nos. 54, 80The Court does not find that Plaintiff has alleged any claims related to his Prison Rape Elimination Act complaint or any claims of negligence, so those arguments need not be addressed. Further, whether Plaintiff has met proof with proof is addressed within the Court's analysis of each claim and not as an independent section.

## II.  FACTUAL BACKGROUND

It is undisputed Defendants Smith and Martinez moved Plaintiff from his cell in Max D to a psych cell on March 25, 2022.  (ECF Nos. 55, 62).  However, the parties dispute the motivation for Plaintiff's relocation.  County Defendants assert Plaintiff made a suicidal statement and made a request to be moved to a psych cell on March 25, 2022.  (ECF No. 55, p. 1).  Plaintiff denies he made any such statements nor request a relocation to the psych cell.  (ECF No. 77-1, p. 11).  Defendants refer to Plaintiff's Prison Rape Elimination Act ("PREA") complaint from March 29, 2022 in which Plaintiff specifically refers to his request for placement in the psych cell.  (ECF No. 40, p. 2).  In his deposition, Plaintiff testifies this PREA complaint did not prove he requested the relocation.  Even though Plaintiff wrote in this report that he requested the transfer, he testifies he forgot to write "they say" in front of his statement "I ask to be moved to a psych cell . . .."  (ECF No. 77-1, p. 11; 55, p. 4).  In Plaintiff's Statement of Disputed Facts, he also disputes County Defendants' Fact that he made a suicidal statement by responding: "I want to be moved to a psych cell is not a suicidal statement."  (ECF No. 62, p. 1).  However, in his Response to County Defendants' Second Motion for Summary Judgment, Plaintiff clearly alleges he did not make any request for a transfer to the psych cell.  (ECF No. 61, p. 3).

Plaintiff also alleges in his deposition that County Defendants transferred him to the psych cell as retribution for writing a grievance on MCDC guards.  (ECF No. 77-1, p. 5).  Specifically, Plaintiff testified he filed a grievance and asked to speak with "CID" because he felt his life was in danger from the guards.  Ten minutes later County Defendants came to transfer him to the psych cell.  *Id.*

It is undisputed Plaintiff refused to leave his cell in Max D when Defendants Smith and Martinez arrived to transfer him to the psych cell, and Defendant Gray was called for assistance.

By the time Defendant Gray arrived, Plaintiff had existed his cell and was cooperating with Defendants Smith and Martinez.  When they arrived at the psych cell, Plaintiff was instructed to remove his clothes before entering the cell as required by MCDC policy.  Plaintiff refused.  (ECF No. 55, pp. 1-2).

What happened next is disputed.  County Defendants assert Defendant Smith gave Plaintiff at least three orders to remove his clothes and Plaintiff continued to refuse and then walked away from the Defendants down the hallway.  (ECF No. 55, p. 2).  Plaintiff states in his Statement of Disputed Facts he only heard one order to remove his clothes and he only walked down the hallway after Defendant Smith sprayed him with OC Spray.  (ECF No. 62, p.1).  However, in his Response, Plaintiff argues he was "trying to reason with the Defendant Corporal Gray [and] Defendant Smith is shouting orders then discharges his OC Spray."[3]  (ECF No. 60, p. 2).

It is undisputed that Defendant Smith sprayed Plaintiff with a short burst of OC spray in his face to gain cooperation and then Defendants Smith, Martinez, and Gray all forcibly removed Plaintiff's clothes.  Then as Defendant Smith was leaving the psych cell, Plaintiff made an aggressive move toward Defendant Smith.  Defendant Smith gave Plaintiff a light shove to the chest to move him away and keep him inside the psych cell.  (ECF Nos. 55, p. 2; 62, p.1).

There is also video footage of a portion of this incident.  The video footage submitted by County Defendants only contains the interactions outside of the psych cell and does not show Defendant Smith spraying Plaintiff.  It does, however, depict Plaintiff arguing with Defendants and Defendant Smith unholstering his OC Spray and shaking it.  The video footage then skips, and Plaintiff is walking backward down the hall away from Defendants and Defendant Smith is

---

[3] Plaintiff and County Defendants repeatedly refer to "OC Spray" throughout the briefing.  The Court notes such reference is to Oleoresin Capsicum spray which is similar to or more commonly known as pepper spray.

holstering his OC spray.  Defendants then grab Plaintiff as he continues to back away from them and they escort him into the cell.  The video skips again during the escort to the cell.  The video does not contain audio, but it is obvious, from Plaintiff's animated and agitated body language, that Plaintiff is arguing with the Defendants throughout the incident.  (ECF No. 81-1, p. 6).[4]  The footage did not capture any portion of the indecent which occurred inside the cell, including the forcible removal of Plaintiff's clothes, or the shove by Defendant Smith.

It is undisputed Plaintiff received decontamination and medical services after this incident. (ECF Nos. 55, p. 2; 62, p. 1).  Plaintiff disputes he was disrespectful to officers in the medical unit. (ECF No. 62, p. 1).  He does not dispute he again resisted being returned to the psych cell, and Defendants Gray and Johnson had to secure Plaintiff in the cell the second time.  (ECF Nos. 55, p. 3; 62, p. 1).

It is undisputed Plaintiff filed a PREA complaint regarding the incident, but it is disputed which Defendants the complaint was filed against.  (ECF Nos. 55, p. 3; 62, p. 2).

Plaintiff initially disputes he was provided any covering, "turtle suit," or sight shield when placed in the psych cell.  (ECF No. 62, p. 2).  However, in his deposition he clarifies that he was naked without a shield or suit for the initial 20-30 minutes in the psych cell.  (ECF No. 77-1, p. 9). He was provided the suit when he was taken to medical for decontamination.  *Id*. at 12.  He also agrees the suit is similar to a blanket such as this:

---

[4] This appears to be the same video footage originally submitted by County Defendants with their first Motion for Summary Judgment.  (ECF No. 31-3).



*Id.*

The parties dispute the size of the psych cell. Defendants claim it was larger than a normal two-man cell. (ECF No. 55, p. 5). Plaintiff alleges it was not and was intended for only one person at a time. (ECF No. 62, p. 2).

It is undisputed the other inmate in the psych cell was an escaped inmate from Bowie County, Texas. County Defendants assert they had no information or knowledge indicating this inmate was a danger to fellow inmates. (ECF No. 55, p. 5). Plaintiff asserts they should have

known he was dangerous because he escaped from Bowie County.  (ECF No. 62, p. 2).  Plaintiff also asserts the other inmate told Defendants he would hurt Plaintiff if they put him in the psych cell.  (ECF No. 60, p. 3).  In his deposition Plaintiff testified, he assumed the other inmate was dangerous because he participated in a "gunfight" with the police before being apprehended.  (ECF No. 77-1, p. 10).  Plaintiff also testified that in the two hours Plaintiff was housed with the other inmate he was not physically harmed in anyway.  *Id*. at 11.  Further, it is undisputed Plaintiff was only housed with this inmate for approximately two hours.  (ECF Nos. 55, p. 6; 62, p. 2).

Plaintiff's only physical injury is a "scar" on his foot from a cut he received when he was pinned against the wall having his clothes stripped off.  (ECF No. 77-1, pp. 7-8).  It is unclear who caused this cut.  No one touched Plaintiff after his clothes were removed.  *Id*. at 9.

Plaintiff also explained in his deposition that he sued Defendants Walker and Adams because they allowed Defendants Smith, Gray, and Martinez's actions against Plaintiff.  Specifically, Plaintiff states Defendant Walker and Adams are training their staff to practice and use cruel and unusual punishment and excessive force.  *Id.*  Plaintiff testified he asked Defendant Adams to move him from the psych cell and Defendant Adams refused.  *Id.*  Plaintiff did not speak with Defendant Walker.

Plaintiff testified in his deposition that Defendants Walker and Adams allowed the actions taken against him.  He further explained they are training their staff in practices of cruel and unusual punishment and excessive force.  (ECF No. 77-1, p. 9).  Furthermore, Plaintiff testified he asked Defendant Adams to move him to a different psych cell, but Defendant Adams refused.  *Id.* at 10.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they

work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

## IV.  DISCUSSION

In the instant Motion and Supplement, County Defendants move for dismissal of all remaining claims against them: (1) Plaintiff's Claim One against Defendants Smith and Martinez in both their individual and official capacities and against Defendant Gray in his official capacity only; (2) Plaintiff's Claim Two against Defendant Gray in his official capacity only; and (3) Plaintiff's Claim Three against Defendants Smith, Martinez, Walker, and Adams in both their individual and official capacities and against Defendant Gray in his official capacity only.  The Court will address each of Plaintiff's claims and County Defendants' arguments in turn.

### A.  Claim One

In Claim One, Plaintiff claims his constitutional rights were violated through the conditions of confinement he endured in the psych cell.  Plaintiff alleges this claim against Defendants Gray, Smith, and Martinez in both their individual and official capacities.  He specifically complains of his condition of undress and the presences in the cell of another inmate he classified as dangerous. (ECF No. 7, pp 6-7).  Plaintiff makes no further allegations in his Amended Complaint regarding the cell condition.  *Id.*

### 1.   Conditions of Confinement

In their Supplement, County Defendants argue the conditions of the psych cell did not rise to the level of punishment, therefore, Plaintiff's constitutional rights were not violated.  Defendants argue Plaintiff was placed in the psych cell for his own protection in response to his suicidal statements.  Plaintiff was placed with another inmate for less than two hours, and the remainder of his three-day stay in the cell was alone.  (ECF No. 77, p. 11).

While Plaintiff did not file a response to Defendants' Supplement to Second Motion for Summary Judgment, he did respond to County Defendants' initial Second Motion for Summary Judgment and gave testimony in his deposition regarding his conditions-of-confinement claim.  In his Response, Plaintiff alleges he did not request to be placed in the psych cell or make suicidal statements.  (ECF No. 61, p. 3).  In his deposition, Plaintiff specifically recants his written statements in his PREA report that contradicts this assertion.  (ECF No. 77-1, p. 11).  Finally, Plaintiff testified in his deposition that he was targeted and placed in the psych cell for filing a complaint on MCDC officers, and not for his own protection.  (ECF No. 77-1, p. 5).

In *Stearns v. Inmate Servs. Corp., et al.,* 957 F.3d 902 (8th Cir. 2020), the Eighth Circuit clarified that, despite some prior inconsistencies in its cases, the deliberate indifference standard of the Eighth Amendment did not apply to conditions of confinement cases brought by pretrial detainees.  Instead, the Eighth Circuit held in *Stearns* that the claims of pretrial detainees must be analyzed under the Fourteenth Amendment as set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979).  In *Bell*, the Court stated that "the proper inquiry is whether [the] conditions amount to punishment of the detainee."  *Id.*, 441 U.S. at 535.  The Eighth Circuit in *Stearns* stated:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment,

> or otherwise violate the Constitution." *Id.* at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id.* at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id.* at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations omitted). In short, the Constitution prohibits conditions for pretrial detainees that: (1) are intentionally punitive; (2) are not reasonably related to a legitimate governmental purpose; or (3) are excessive to that stated purpose. *Id.* Conditions of confinement that are reasonably related to a legitimate government interest do not amount to punishment. *Bell,* 441 U.S. at 536-39. "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010). Detainees are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time. *Owens v. Scott Cty. Jail*, 328 F.35 1026, 1027 (8th Cir. 2003) (citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)).

Here, Defendants have a legitimate governmental interest in protecting detainees. *See e g., Coleman v. Holladay*, Civil No. 4:16CV00759-BRW/JTR, 2018 WL 4137044, at *4 (E.D. Ark. Aug. 7, 2018) ("segregating a pretrial detainee and placing him on suicide watch is not unconstitutional when the detainee has displayed, or has expressed an intent to engage in, self-harming behavior and the purpose of the placement is to prevent him from injuring himself") (citing *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005); *Conway v. Henze,* 14 Fed. Appx. 645, 650-51 (7th Cir. 2001)). However, there is a genuine issue of fact as to whether Plaintiff needed protecting from himself here or he was placed in the psych cell as punishment for complaining on the MCDC officers. While the Court recognizes the credibility issues in Plaintiff's

retraction of his PREA statement, Plaintiff's version of events is not blatantly contradicted by the record here. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007). A jury may choses to believe Plaintiff's retraction of his PREA statement, and at this stage the Court cannot weigh evidence or determine credibility. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (explaining the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence as those are jury functions). Accordingly, the Court finds there is a genuine factual dispute as to whether Plaintiff was suicidal, requested transfer to the psych cell, or otherwise needed housing under such protective conditions as the psych cell. Therefore, the Court is unable at this juncture to determine whether Plaintiff's housing in the psych cell and the conditions he suffered therein are reasonably related to a legitimate governmental purpose or where punitive in nature as alleged by Plaintiff.

### 2. Qualified Immunity

Defendants also argue, even if the Court finds a constitutional violation, they are entitled to qualified immunity on Plaintiff's conditions of confinement claim. Qualified immunity "shields [a] government official from liability in a section 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted).

If Plaintiff's version of the facts is proven and Defendants stripped him and confined him to the psych cell as punishment, he will have established a violation of this Fourteenth Amendment rights.  So, the next inquiry is whether such a right to be free from such punishment as a pretrial detainee was clearly established in March 2022.  The Court finds it was in fact clearly established at that time.  *See Bell,* 441 U.S. at 535.  However, it was also clearly established that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Id.*  at 539.  As noted, in this case, there are questions of fact as to County Defendants' motivation for stripping and placing Plaintiff in the psych cell.  This issue of fact precludes a finding that Defendants are entitled to qualified immunity at this juncture.  *See e.g., Matlock v. Hickman,* Civil No. 3:15-cv-03083-TLB-MEF, 2016 WL 4425730 (W.D. Ark. July 21, 2016) (denying qualified immunity on a Fourteenth Amendment claim when issues of fact exist as to the motivation for administrative segregation of a pretrial detainee), Report and Recommendation adopted by 2016 WL 4435088.[5]

### 3.   Official Capacity

Plaintiff also alleges an official capacity claim against Defendants Smith, Gray, and Martinez in Claim One.  In this official capacity claim Plaintiff alleges Defendants Smith, Gray, and Martinez were deliberately indifferent to his safety which "could have resulted" in a sexual or

---

[5] Plaintiff also alleges in his deposition that the psych cell was nasty with blood and feces all over it, he was denied eating utensils and a bath, and only had water out of the dirty cell sink to drink.  (ECF No. 77-1, pp. 6-7).  These allegations of the cleanliness of the psych cell, Plaintiff's access to water, baths, or eating utensils are not alleged in Plaintiff's Amended Complaint.  (ECF No. 7).  Plaintiff cannot use his response to Defendants' Second Motion for Summary Judgment or his deposition to allege new conditions of confinement claims.  *See Northern States Power Co. v. Federal Transit Admin,* 358 F.3d 1050, 1057 (8th Cir. 2004) (explaining the pleading requirements of the Federal Rule of Civil Procedure are "relatively permissive," but they do not allow plaintiffs to assert claims, which were not pled, for the purpose of avoiding summary judgment).

physical assault when they stripped and forced him into the psych cell with the other inmate.  (ECF No. 7, p. 7).

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claim against Defendants Smith, Gray, and Martinez is treated as a claim against Miller County.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish Miller County's liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, this means Plaintiff must point to summary judgment evidence to show a policy or custom of Miller County contributed to his claimed constitutional violation—unsafe conditions of confinement.

There is no summary judgment evidence here to indicate Miller County's policies caused Plaintiff's conditions of confinement.  Likewise, the summary judgment record is devoid of any evidence to establish a claim for "custom" liability.  To establish custom liability, Plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013).  "A single deviation from a written, official policy does not prove a conflicting custom." *Id.* at 828-9 (internal quotation and citation omitted).  Plaintiff has failed to do so here.

Accordingly, Plaintiff's official capacity claims in Claim One should be dismissed.

### B.  Claim Two

In Claim Two, Plaintiff asserts Defendants Gray, Smith, and Martinez used excessive force against him when they sprayed him with OC Spray, forced him into the psych cell, and forcibly stripped him of his clothes.  (ECF No. 7, p. 7).  However, the only use of force at issue on the instant Motion is Defendant Gray's forcible removal of Plaintiff's clothes.

The Court notes County Defendants' argument that Claim Two was dismissed by the Court's previous Order.  (ECF No. 77).  However, Claim Two was not dismissed entirely by the previous Court Order.  (ECF Nos. 49, 57).  Claim Two was dismissed against Defendants Smith and Martinez in both their individual and official capacities, but Claim Two remains as alleged against Defendant Gray in his individual and official capacities.  Plaintiff's official capacity claim being the only one is at issue here.

The summary judgment record is devoid of any evidence showing a policy or custom of Miller County caused Defendant Gray's use of force against him.[6]  Accordingly, just as with

---

[6] The MCDC use of force policy is not attached to Defendants' Second Motion for Summary Judgment or their Supplement to Second Motion for Summary Judgment.  (ECF Nos. 53, 77).  However, County Defendants did attach the MCDC Policy on use of force to its first Motion for Summary Judgment.  (ECF No. 31-7, p. 8).  Plaintiff, however, makes no allegations this policy is unconstitutional or caused any unconstitutional uses of force against him.

Plaintiff's official capacity claims in Claim One, Plaintiff's official capacity claim against Defendant Gray for excessive force in Claim Two fails as a matter of law and should be dismissed.[7]

### C.  Claim Three

In Claim Three, Plaintiff alleges all County Defendants exhibited deliberate indifference by: (1) ignoring obvious safety factors; (2) subjecting him to cruel and unusual punishment; and (3) subjecting him to excessive force when they stripped off his clothes and forced him into a one-man cell with another inmate.  (ECF No. 7, pp. 8-9).  These claims are asserted against all County Defendants in their individual and official capacities.

### 1.  Interpretation of Claim Three

While Plaintiff list Claim Three as a distinct claim, the Court interprets it as a reiteration of his Claim One and Two as he is again complaining of his conditions of confinement and the uses of force.  Accordingly, the Courts analysis on Claims One and Two apply to the reiterations in Claim Three—Plaintiff's conditions of confinement claim against Defendants Smith, Martinez, and Gray in their individual capacities only should survive summary judgment and Plaintiff's official capacity claims against Defendants Smith, Martinez, and Gray should be dismissed.

Defendants propose that Plaintiff may be attempting to assert a failure to protect claim in Claim Three.  Based on the record before it, the Court does not interpret Plaintiff's allegations to assert any such claim.  Plaintiff admits the other inmate never caused him any harm.  (ECF No. 77-1, p. 11).  Instead, the Court finds Plaintiff is simply restating his claim that County Defendants subjected him to unsafe conditions of confinement or unconstitutional punishment.

---

[7] The Court also notes, it previously held Plaintiff did not experience a constitutional violation related to the stripping of his clothes.  (ECF Nos. 49, 57).  Accordingly, there can be no corresponding official capacity claims. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).

## 2. Respondeat Superior

Additionally, Plaintiff cannot establish liability of Defendants Adams and Walker in Claim

Three because a claim of deprivation of a constitutional right cannot be based on a *respondeat*

*superior* theory of liability.  *See Monell v. Department of Social Servs.*, 436 U.S. 654, 694 (1978).

"[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional

activity."  *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County*

*Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own

misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat

superior or supervisor liability.") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309,

1314 (8th Cir. 1997) (general responsibility for supervising the operations of a prison is insufficient

to establish the personal involvement required to support liability).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the

deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must

allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his

constitutional rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting

*Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).

In his Amended Complaint, Plaintiff made no allegation that Defendants Walker and

Adams played any role in stripping him and confining him in the psych cell with another inmate.

(ECF No. 7).  When asked in his deposition how Defendants Adams and Walker violated his

constitutional rights, Plaintiff stated they allowed it to happen.  (ECF No. 77-1, p. 9).  Plaintiff also

alleged he asked Defendant Adams to move him, but Defendants Adams refused because he was

already in the only psych cell available.  *Id.* at 10.  However, Plaintiff fails to allege any facts to

determine a causal link between his conditions of confinement and Defendants Walker and Adams.

Accordingly, Plaintiff's allegations are insufficient to state any Section 1983 claim against Defendants Walker or Adams because they are based on a theory of *respondeat superior*.[8]

### 3.  Official Capacity

As the Court has determined Plaintiff has failed to state a separate cognizable constitutional violation regarding his Claim Three—independent from Claims One and Two—against all County Defendants, there can be no corresponding official capacity claim asserted in Claim Three.  *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (The Eighth Circuit has consistently recognized without an underlying substantive constitutional violation against a defendant in their individual capacity, a plaintiff cannot be successful on an official capacity claim against that defendant's employer).  Furthermore, as the Court construes Plaintiff's Claim Three to reiterate his claims made in One and Two, and the Court has previously determined no official capacity claims were stated in Claims One and Two any such official capacity claims in Claim Three fails for the same reasoning.

### D.  No Physical Injury

County Defendants also make a general argument that Plaintiff's claims should all be dismissed pursuant to the Prison Litigation Reform Act ("PLRA") because he did not suffer any physical injury.  Section 1997e(e) provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The

---

[8] Plaintiff also alleged in his deposition that Defendants Adams and Walker trained their staff in practices that allowed cruel and unusual punishment, excessive force, and conditions of confinement.  (ECF No. 77-1).  However, this is the first time Plaintiff has alleged a failure to train claim in this matter.  As previously explained herein, Plaintiff may not allege new claims for the first time in response to a motion for summary judgment.

summary judgment record is clear here that Plaintiff suffered no physical injury as a result of his conditions of confinement.  However, the Eighth Circuit explained in *Royal v. Kautzky* that Congress did not intend Section 1997e(e) to bar recovery for all forms of relief.  375 F.35 720, 723 (8th Cir. 2004).  Plaintiff may still seek nominal and punitive damages and declaratory relief without proof of physical injury.  *Id.*  Accordingly, Plaintiff should be limited to only those damages available pursuant to the PLRA and *Royal* on his surviving claims.

## V. CONCLUSION

For the reasons stated above, I recommend the Defendants' Second Motion for Summary Judgment and Supplement (ECF Nos. 53, 77) be **GRANTED in part and DENIED in part.**  All of Plaintiff's claims should be **DISMISSED WITH PREJUDICE** except for his conditions-of-confinement claim, as asserted in his Amended Complaint, against Defendants Smith, Martinez, and Gray, in their individual capacities only, and his excessive force claim against Defendant Gray in his individual capacity only which shall remain for further litigation.  Defendants Walker and Adams should be dismissed from this matter.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**Referral Status: This case should remain referred.**

**DATED this 26th day of July 2024.**

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE